**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

WASHINGTON STATE HEALTH
CARE AUTHORITY; SWINOMISH
INDIAN TRIBAL COMMUNITY,

                *Petitioners,*

  v.

CENTERS FOR MEDICARE &
MEDICAID SERVICES; U.S.
DEPARTMENT OF HEALTH &
HUMAN SERVICES,

                *Respondents.*

No. 21-70338

OPINION

On Petition for Review of an Order of the
Department of Health & Human Services

Argued and Submitted September 1, 2022
Seattle, Washington

Filed January 12, 2023

Before:  M. Margaret McKeown and Ronald M. Gould,
Circuit Judges, and Jed S. Rakoff,[*] District Judge.

Opinion by Judge Gould

## SUMMARY[**]

### Medicaid

The panel granted a petition of review brought by the Washington State Health Care Authority ("HCA") and the Swinomish Indian Tribal Community challenging the Center of Medicare and Medicaid Services ("CMS")'s decision denying Washington's request to amend Apple Health, the Washington State Medicaid plan.

HCA petitioned CMS to amend the State Plan to include dental health aide therapists ("DHATs") on the list of licensed providers who can be reimbursed through Medicaid.  CMS rejected the Amended State Plan on the basis that it violated the Medicaid free choice of providers statute and regulation guaranteeing all Medicaid beneficiaries equal access to qualified healthcare professionals willing to treat them.  *See* 42 U.S.C. § 1396a(a)(23)(A); 42 C.F.R. § 431.51(b)(1).

---

[*] The Honorable Jed S. Rakoff, United States District Judge for the Southern District of New York, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

The panel rejected CMS's reasoning on the ground that the underlying Washington statute—Wash. Rev. Code § 70.350.020—did not violate Section 1396(a)(23) because it merely authorized where and how DHATs can practice and did not in any way restrict Medicaid recipients' ability to obtain service from DHATs relative to non-Medicaid recipients. CMS's rejection of the Amended State Plan was "not in accordance with law." 5 U.S.C. § 706(2)(A). Accordingly, the panel granted the petition for review and remanded to the agency with instructions to approve the Amended State Plan.

## COUNSEL

William T. Stephens (argued), Senior Counsel; Michael Bradley, Assistant Attorney General; Robert W. Ferguson, Attorney General; Washington State Attorney General's Office; Olympia, Washington; Stephen T. LeCuyer (argued); Calvin G. Rapada; Office of Tribal Attorney, Swinomish Indian Tribal Community, La Conner, Washington; for Petitioners.

Sarah J. Clark (argued); Cynthia A. Barmore, Alisa B. Klein, and Bridgette Kaiser, Attorneys; Susan Maxson Lyons, Deputy Associate General Counsel for Litigation; Janice L. Hoffman, Associate General Counsel; Daniel J. Barry, Acting General Counsel; Brian M. Boynton, Principal Deputy Assistant Attorney General; for Respondents.

Carla M. DewBerry and Bart Feedman, K&L Gates LLP, Seattle Washington, for Amicus Curiae Lummi Indian Reservation.

Richard D. Monkman, Sonosky Chambers Sachse Miller & Monkman LLP, Juneau, Alaska, for Amici Curiae Northwest Portland Area Indian Health Board and The Alaska Native Tribal Health Consortium.

---

## OPINION

GOULD, Circuit Judge:

The Washington State Health Care Authority ("HCA") and the Swinomish Indian Tribal Community petition for review of a Center for Medicare and Medicaid Services ("CMS") decision denying Washington's request to amend Apple Health, the Washington State Medicaid plan (the "State Plan").

HCA petitioned CMS to amend the State Plan to include dental health aide therapists ("DHATs") on the list of licensed providers who can be reimbursed through Medicaid. CMS rejected the Amended State Plan on the basis that it violates the Medicaid free choice of providers statute and regulation guaranteeing all Medicaid beneficiaries equal access to qualified healthcare professionals willing to treat them. *See* 42 U.S.C. § 1396a(a)(23)(A); 42 C.F.R. § 431.51(b)(1). Petitioners challenge this denial.

We reject CMS's reasoning on the ground that the underlying Washington statute does not violate Section 1396a(a)(23) because it merely authorizes where and how DHATs can practice and does not in any way restrict Medicaid recipients' ability to obtain services from DHATs relative to non-Medicaid recipients.

## I.      Background
## A.  Medicaid Free Choice of Provider Provision

To receive federal funds for their Medicaid programs, states must submit a state plan that meets federal statutory and regulatory requirements.  *See* 42 U.S.C. § 1396a(a); 42 C.F.R. §§ 430.10, .12., .15(a).  A state must amend its state plan to reflect "[m]aterial changes in State law."  42 C.F.R. § 430.12(c)(1)(ii).  CMS must approve state plans and plan amendments that meet the governing statutory and regulatory requirements.  *See* 42 U.S.C. § 1396a(b); 42 C.F.R. § 430.15(a).  The Medicaid free choice of provider provision is one such statutory and regulatory requirement. *See* 42 U.S.C. § 1396a(a)(23); 42 C.F.R. § 431.51(b).

Under the free choice of providers provision, a state plan must provide that "a beneficiary may obtain Medicaid services from any institution, agency, pharmacy, person, or organization that is (i) Qualified to furnish the services; and (ii) Willing to furnish them to that particular beneficiary." 42 CFR § 431.51(b)(1); 42 U.S.C. § 1396a(a)(23) ("[A]ny individual eligible for medical assistance . . . may obtain such assistance from any institution, agency, community pharmacy, or person, qualified to perform the service or services required . . . who undertakes to provide him such services.").  Under this provision, Medicaid beneficiaries have "the right to choose among a range of *qualified* providers, without government interference."  *O'Bannon v. Town Ct. Nursing Ctr.*, 447 U.S. 773, 785 (1980) (emphasis in original).  We have further clarified that "the free-choice-of-provider provision unambiguously requires that states participating in the Medicaid program allow covered patients to choose among the [] medical practitioners they could use were they paying out of their own pockets." *Planned Parenthood Ariz. Inc. v. Betlach*, 727 F.3d 960, 971

(9th Cir. 2013).

## B.  DHATs under IHS and Washington state law

In order to address serious unmet health care and dental care needs for Native Americans, Congress authorized the Indian Health Service ("IHS") to provide certification and training to certain mid-level health care providers through the Community Health Aid Program ("CHAP").  In Alaska, the CHAP includes DHATs—mid-level dental professionals.  In the lower 48, tribes can elect to establish a DHAT program if "the use of dental health aide therapist services or midlevel dental health provider services is authorized under State law" and the tribe provides the DHAT "services in accordance with State law."  25 U.S.C. § 1616l(d)(3)(A).

Prior to 2017, Washington law did not authorize mid-level dental health providers.  In 2017, Washington authorized a limited scope of practice for DHATs.  Specifically, under Washington law, DHATs can only provide services "[i]n a practice setting within the exterior boundaries of a tribal reservation and operated by an Indian health program."  Wash. Rev. Code § 70.350.020(1)(b)(i).  In addition, DHATs may only treat members of federally recognized tribes or individuals who are "otherwise eligible for services under Indian health service criteria."  *Id.* § 70.350.020(1)(b)(iv).  Washington requires that the DHAT be certified by either a tribe or a CHAP certification board.  *Id.* (a).

The Swinomish Tribe in Washington elected to establish a DHAT program.  The Tribe has adopted comprehensive licensing standards, which incorporate the Alaska DHAT program standards.  The Tribe, which receives Medicaid funds for other health services it provides, cannot currently

receive Medicaid funds for its DHAT program because DHAT providers are not yet included as covered professionals under the State Plan.

## C. Washington State Plan Amendment

Washington submitted an Amended State Plan to CMS that reflected the change in state law by adding DHATs to the list of providers who can receive Medicaid reimbursement in Washington. CMS rejected the Amended State Plan because, as relevant to this appeal, CMS found that it violated the Medicaid free choice of providers provision by restricting "access to services provided by Dental Health Aide Therapists (DHATs) to a limited group of beneficiaries, and . . . prevent[ing] beneficiaries from receiving DHAT services from similarly qualified dental services providers that provide services outside the boundaries of a tribal reservation or that are not Indian health programs." Washington requested reconsideration of the decision. CMS appointed a presiding officer and held a hearing to reconsider the CMS decision. After the hearing, the CMS Presiding Officer recommended that the CMS Administrator approve the Amended State Plan because it did not violate the free choice of provider provision. The CMS Administrator, however, rejected the recommendation of the Presiding Officer and instead found that the Amended State Plan violated the free choice of provider provision, reasoning that the amendment "restricts access to DHAT services for some Medicaid beneficiaries for reasons unrelated to whether DHATs are 'qualified' to provide services to those beneficiaries." Washington appealed.

## II. Standard of Review

We have jurisdiction under 42 U.S.C. § 1316(a)(3), and we review CMS's decision under the Administrative

Procedure Act ("APA"), which directs us to set aside agency actions if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

## III. Analysis

In interpreting the free choice of provider provision, we previously held that states cannot limit Medicaid beneficiaries' ability "to choose among the . . . medical practitioners they could use were they paying out of their own pockets." *Betlach*, 727 F.3d at 971. Under Washington law, DHATs are only authorized to treat tribal members and others eligible for IHS benefits, regardless of whether the individuals receive Medicaid or not. *See* Wash. Rev. Code § 70.350.020(1)(b)(iv). In keeping with our reasoning in *Betlach*, we hold that Washington's licensing law defining the scope of DHATs' practice does not violate the free choice of provider provision. Thus, CMS's rejection of the Amended State Plan on those grounds was not in accordance with the law.

Under the Medicaid Act, states have the "authority to regulate the practice of medicine within [their] borders," which includes setting out state licensing standards and scope of practice requirements. *See Betlach*, 727 F.3d at 975. Under the Medicaid free choice of provider provision, however, states cannot create separate licensing and scope of practice criteria based on whether a medical professional serves Medicaid beneficiaries or not. *Id.* at 969. In *Betlach*, we held that an Arizona statute barring Medicaid beneficiaries from receiving covered gynecological and non-abortion family planning services from providers who also performed abortions violated the free choice of provider provision. *Id.* at 962, 964. The Arizona law explicitly

prevented Medicaid patients from receiving services from providers "qualified" to offer those services who also provided abortion services, while non-Medicaid beneficiaries could receive services from these providers. *Id.* at 968–75. The issue in *Betlach* of whether a provider was qualified under the Medicaid free choice of provider statute turned on "whether the provider [was] qualified in a general sense to *perform*, i.e., *carry out*, the service in question, whether for Medicaid patients or for any other patients." *Id.* at 969 (emphasis in original). We held that state licensure and scope of practice standards must be tied to "factors external to the Medicaid program." *Id.*

Wash. Rev. Code § 70.350.020 authorizes DHATs to practice within limited scope based on factors external to Medicaid. The Washington statute authorizes DHATs to practice within limited scope under a tribe's licensure requirements, regardless of whether the patients are Medicaid beneficiaries or not. This statute does not limit a Medicaid beneficiary's choice. A non-tribal member may not receive treatment from a DHAT, regardless of whether that person pays out of pocket or is a Medicaid beneficiary. Likewise, a tribal member may receive treatment from a DHAT regardless of that person's status as a Medicaid beneficiary. Thus, Wash. Rev. Code § 70.350.020 does not prevent "any individual eligible for medical assistance" through Medicaid from "obtain[ing] such assistance from any [provider] . . . qualified to perform the service or services required . . . who undertakes to provide him such services." 42 U.S.C. § 1396a(a)(23)(A).

We hold that the Amended State Plan does not violate the Medicaid free choice statute because Wash. Rev. Code § 70.350.020 does not distinguish between Medicaid and non-Medicaid recipients.  *See* 42 C.F.R. § 431.51(b)(1). CMS's rejection of the Amended State Plan was "not in accordance with law."  5 U.S.C. § 706(2)(A).  We grant the petition for review and remand to the agency with instructions to approve the Amended State Plan.

**We GRANT the petition, and REMAND to CMS with instructions to approve Petitioners' Amended State Plan. The parties shall bear their own costs on appeal.**